James W. ALMOND

v.

UNITED STATES STEEL CORPORATION.

Civ. A. No. 80–1144.

United States District Court,
E. D. Pennsylvania.

July 17, 1980.

Marshall H. Harris, Regional Sol., Philadelphia, Pa., Carin Ann Clauss, Sol. of Labor, Dept. of Labor, Washington, D. C., Edward T. Ellis, Susan Bricklin, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

James T. Carney, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

VanARTSDALEN, District Judge.

The present cross motions for summary judgment require a determination of the applicability of the Vietnam Era Veterans' Readjustment Assistance Act of 1974, 38 U.S.C. § 2011 *et seq.* (Vietnam Veterans Act), to the millwright apprentice program of the United States Steel Corporation (U.S. Steel). Defendant's motion for summary judgment will be denied. Plaintiff's motion for summary judgment on the issue of liability will be granted.

U.S. Steel maintains an apprentice program whereby laborers may become millwrights. The program consists of classroom and on–the–job training in nine basic categories, each of which has an assigned number of credit hours toward the required total of 7,280 hours. Each category requires passing a test. The test may be taken after some minimum number of hours training, and if the test is passed, the apprentice is given credit for the total number of credit hours assigned to that category. If an apprentice fails a test, he may remain in the program, but will receive no additional credit hours toward the total of 7,280 for any training required in excess of the assigned number of credit hours for that category.

During any period in which an apprentice millwright would otherwise be laid off, he may elect to continue in the program in a "lay–off training status," provided he has successfully completed 25% of the required 7,280 credit hours. A lay–off training status permits the apprentice to continue both classroom and on–the–job training, but his pay consists of that which he would receive by way of unemployment compensation and supplemental unemployment benefits (SUB) if he were in fact laid off.

Plaintiff, a laborer, became an apprentice millwright on March 18, 1974. He was

called to active duty for summer training as a naval reservist from June 17, 1974 to June 28, 1974, after which he returned as an apprentice millwright. On February 15, 1975 he was laid off without being afforded the option of electing to continue the apprentice program in a "lay–off training status." Plaintiff had 1,780 credit hours in the apprentice program as of the lay–off date of February 15, 1975. To qualify for "lay–off training status," plaintiff needed 40 more credit hours for a total of 1,820 credit hours. Had he not been on active duty during the two weeks in June, 1974, he would have had, as of February 15, 1975, sufficient credit hours to remain in the apprentice program.

Plaintiff was recalled as a laborer on September 22, 1975, again laid–off on October 3, 1975, and finally recalled on October 27, 1975. He was able to return to the apprentice program on July 26, 1976[1] and has since successfully completed the program and become a millwright.

Plaintiff does not seek credit for any apprentice hours lost during his period of active duty against the required 7,280 credit hours. He seeks recognition of his right, as of the date he was originally laid off on February 15, 1975, to have elected to continue in the apprentice millwright program from February 15, 1975 until July 26, 1976 (when he was able to return to the program). Plaintiff contends that he was improperly denied the wages of a millwright, which are substantially higher than those of a laborer, during the approximately 17 months' hiatus in his training program, brought about by his two weeks active summer military duty.[2]

Defendant's position is that successful completion of the apprentice program depends upon work performance and test results, and is not dependent on seniority or merely length of service. It is plain, however, that had plaintiff not been called to active duty, he would not have been laid off

and he would have become a millwright about 17 months earlier than he actually did.

The Vietnam Veterans Act requires that upon return from active military duty, an employee such as plaintiff be restored to his former employment with such seniority, status, pay and vacation as he would have had if he had not been on active duty. 38 U.S.C. § 2024(d). This Act is substantially a reenactment of legislation that has been in effect since 1940. See Selective Training and Service Act of 1940, ch. 720, § 8(b), 54 Stat. 885, 890 (later reenacted as the Military Selective Service Act of 1967, 50 U.S.C. App. § 459, and subsequently recodified as 38 U.S.C. § 2021 et seq.) Thus, cases decided under such predecessor statutes are instructive.

Tilton v. Missouri Pacific R.R. Co., 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964), involved seniority rights, but is analogous to the present case. The principle established in Tilton is that a veteran whose completion of a prerequisite for a job classification is delayed by military service, obtains seniority upon completion of such prerequisite, retroactively to the time he would have completed the prerequisite but for the interruption by military service. In Tilton, carman helpers, selected by joint representatives of the union and railroad were "upgraded" in duties and pay, but did not acquire seniority as mechanics until they had completed 1040 days of actual work as carman mechanics in such "upgraded" status. Petitioners had been selected and commenced work as "upgraded" carmen doing carman mechanics' work when they were called to active duty. Upon return from military service, they completed the prerequisite 1040 days of work in such upgraded status. They were granted seniority as of the date of completion of the 1040 days' work. The Supreme Court held that their seniority date should be retroactively established as of the time that, had it not been for military service, they would have completed the 1040 days' work.

---

1. Apparently, on his return he was credited with the 1,780 credit hours previously accumulated.

2. Seniority is apparently not affected by the delay, since seniority operated from the date of hiring at the plant.

A returning veteran cannot claim a promotion that depends solely upon satisfactory completion of a prerequisite period of employment training unless he first works that period. But upon satisfactorily completing that period, as petitioners did here, he can insist upon a seniority date reflecting the delay caused by military service. Any lesser protection, would deny him the benefit of the salutary provisions of §§ 9(c)(1) and 9(c)(2) of the Universal Military Training and Service Act.

*Id.* at 181, 84 S.Ct. at 602.

In *Fishgold v. Sullivan Drydock and Repair Corp.,* 328 U.S. 275, 284–285, 66 S.Ct. 1105, 1110, 90 L.Ed. 1230 (1946), the Supreme Court held that the returning veteran "does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war."

■ If a promotion depends on the mere passage of time, it is a seniority right, to which a returning veteran is entitled. *Tilton v. Missouri Pacific R.R. Co., supra, Cohn v. Union Pacific R.R. Co.,* 427 F.Supp. 717 (D.Neb.1977), *aff'd,* 572 F.2d 650 (8th Cir.), *cert. denied,* 439 U.S. 836, 99 S.Ct. 120, 58 L.Ed.2d 136 (1978); *Beard v. Norfolk and Western R.R. Co.,* 484 F.Supp. 758 (W.D.Va. 1980). However, if the promotion depends on the exercise of discretion on the part of the employer rather than mere passage of time, the promotion is not guaranteed. *McKinney v. Missouri–Kansas–Texas R.R. Co.,* 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958).

In the context of a dispute over severance pay, the Supreme Court has held that a returning veteran is entitled to the full severance pay he would have received had he remained employed during the period that he was on active duty, since severance pay is a perquisite of seniority. *Accardi v. Pennsylvania R.R. Co.,* 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed.2d 717 (1966). Pension benefits are also regarded as perquisites of seniority for purposes of the Veterans Act. *Alabama Power Co. v. Davis,* 431 U.S. 581,

97 S.Ct. 2002, 52 L.Ed.2d 595 (1977). Vacation pay, on the other hand, has been held not to be within the protection of the statute, in light of "the common conception of a vacation as a reward for and respite from a lengthy period of labor." *Foster v. Dravo Corp.,* 420 U.S. 92, 101, 95 S.Ct. 879, 884, 43 L.Ed.2d 44 (1975).

The most recent Supreme Court case in this area, *Coffy v. Republic Steel Corp.,* —— U.S. ——, 100 S.Ct. 2100, 65 L.Ed.2d 53 (1980), states two tests for determining whether a benefit is a perquisite of seniority, and thus covered under the act:

First, there must be a reasonable certainty that the benefit would have accrued if the employee had not gone into military service. Second, the nature of the benefit must be "a reward for length of service," rather than a form of "short–term compensation for services rendered."

*Id.* 100 S.Ct. at 2105, *citing Alabama Power Co. v. Davis, supra* at 431 U.S. 589, 97 S.Ct. at 2007. The Court held that supplemental unemployment benefits (SUB) should be computed as if the plaintiff veteran had been employed by Republic during the period of his military service, which would have entitled him to 52 weeks of compensation, instead of 25 weeks. The Court of Appeals for the Third Circuit had correctly anticipated *Coffy* in the case of *Hoffman v. Bethlehem Steel Corp.,* 477 F.2d 860 (3d Cir. 1973), as had the Seventh Circuit in *Akers v. General Motors Corp.,* 501 F.2d 1042 (7th Cir. 1974).

Defendant contends that advancement under the apprenticeship program depends upon actual work performance rather than upon seniority or longevity. However, the benefit to which plaintiff contends he was entitled was the right to continue in the apprentice training program in a "lay–off training status." That right existed by reason of the labor–management agreement between the defendant and the United Steelworkers of America, the union representing plaintiff. Under the agreement, an apprentice "who has completed at least 25% of the total hours required to complete the apprenticeship program in which he is en-

rolled at the time that he would, by reason of the applicable seniority provisions, be laid off or demoted to a lower rated job, shall be afforded an opportunity" to elect to remain in the apprentice program in the "lay–off training status." Plaintiff was not afforded that opportunity.

■ Although an apprentice must complete certain studies and tests, in this case it is clear that had not plaintiff been on active duty during the two weeks in question, he would have completed the required 25% of the total hours. The right to elect to stay in the apprentice training program during a period of lay–off was in no way contingent upon work performance; it was contingent only upon having been in the program at the time of lay–off for a certain minimum period of time–a requirement relating simply to the apprentice's degree of longevity in the program.

Applying the two prong test of *Coffy* and *Alabama Power*, there was "a reasonable certainty that the benefit would have accrued if the employee [plaintiff] had not gone into military service." There is no contention or suggestion that had he not gone into the service he would either voluntarily or involuntarily have been terminated from the program prior to the lay–off date of February 15, 1975. He was in fact still in the program on that date, with only 40 hours less than the required 25% of total program time. These 40 hours, and more, he would have worked during the two week summer military service. Although final advancement to millwright status was ultimately dependent upon work performance, it is clear that his work performance at that time was satisfactory, inasmuch as he subsequently advanced to the position of millwright upon completion of the course, albeit some 17 months later than he otherwise would have been so advanced.

The benefit, *i. e.*, the right to elect to remain in the program during a lay–off period was in the nature of "a reward for length of service," rather than a form of "short term compensation for services rendered"–at least to the extent that this test is applicable to the present case. All who remained in the program a sufficient length of credit–hours time were entitled to the benefit regardless of the quality of the services rendered. Thus, it was an entitlement based on seniority.

The statute protects those members of the Armed Forces Reserves, such as plaintiff, who perform their required obligations as reservists. An employee for a private employer "shall not be denied retention in employment or any promotion or other incident or advantage of employment because of an obligation as a member of a Reserve component of the Armed Forces." 38 U.S.C. § 2021(b)(3).

Defendant, in precluding plaintiff from continuing in the apprentice program as of February 15, 1975, the date of his lay–off, violated the provisions of the Vietnam Veterans Act, 38 U.S.C. §§ 2024(d) and 2021(b)(3). Plaintiff is entitled to judgment on the issue of liability. Damages will be subject to a trial, if the parties are unable to agree as to a correct computation thereof.

ORDER

It is ORDERED that defendant's motion for summary judgment is DENIED; plaintiff's motion for partial summary judgment is GRANTED on the issue of liability.

It is further ORDERED that judgment is entered in favor of plaintiff James W. Almond and against defendant United States Steel Corporation on the issue of liability, it appearing that plaintiff was and is entitled to the benefit of electing to remain in the apprentice millwright training program in a "lay–off training status" as of the date of his lay–off on February 15, 1975.

Trial on the issue of damages, if the parties are unable to agree as to the amount thereof, is set for Monday August 18, 1980 at 9:30 A.M. in Courtroom 14A. The parties shall have until August 15, 1980 to complete discovery on the issue of damages.